## HART *v.* BAYLISS.

### (*Jackson.*   June 16, 1896.)

1. TRUSTS.   *An active one.*

   A deed creates an active trust when by its terms a trustee holds the property conveyed, and its rents and profits, and its proceeds if sold, for the sole use and benefit of the grantor's wife, free from his control, debts, and liabilities, and from those of any future husband.   (*Post, pp. 73, 77–81.*)

   Cases cited and approved: Cardwell *v.* Cheatham, 2 Head, 17; Ellis *v.* Fisher, 3 Sneed, 234; Murdock *v.* Johnson, 7 Cold., 612; Hooberry *v.* Harding, 10 Lea, 397; Harding *v.* Insurance Co., 2 Tenn. Ch., 468; Jourolmon *v.* Massengill, 86 Tenn., 97; Campbell *v.* Fields, 1 Cold., 416; Hicks *v.* Gosling, 1 Lea, 570; Head *v.* Temple, 4 Heis., 34; Henson *v.* Wright, 88 Tenn., 507; Porter *v.* Lee, 88 Tenn., 782.

2. SAME.   *Void conveyance of trust estate.*

   A conveyance to secure the husband's debt of property held by a trustee, for the sole benefit of the wife, free from the control, debts, and liabilities of the husband, is void, although the husband and wife and the trustee join in its execution.   The wife had no title to convey.   The trustee's deed is in violation of the trust, and therefore inoperative.   (*Post, pp. 81–83.*)

---

### FROM SHELBY.

---

Appeal from Second Chancery Court of Shelby County.   STERLING PIERSON, Ch.

GEORGE GILLHAM for Hart.

SMITH & TREZEVANT for Bayliss.

JOHN T. ALLEN, Sp. J.   This is a bill filed to enjoin the sale of certain real estate in the city of Memphis, under a deed of trust executed by complainant and her husband, to secure a debt for money loaned to the husband, and to set aside said deed of trust, etc.

Prior to July 11, 1865, E. R. Hart was the owner in fee of a house and lot in Memphis, Tennessee, the same being lot 10 in block northwest corner of Shelby and Huling Street, sixty feet front on Shelby by a depth on Huling Street of two hundred feet.

On the eleventh day of July, 1865, he conveyed said property, with some household goods, furniture, etc., to Ruel Hough, as trustee, in consideration of $16,000, he to hold the same for the use and benefit of the complainant, Kate Hart, his wife, as her sole and separate estate.

The granting clause of the conveyance is as follows: "This conveyance is made to said R. Hough for the following uses and trusts: The said Hough, his heirs, executors, administrators, assigns, and successors, as trustees, are to hold the said property for the sole use and benefit of Kate Hart, wife of E. R. Hart, free from dominion, debts, or liabilities of her present or any future husband, and the rents, profits, proceeds of, or sale or profits of said property, or any portion thereof, shall be held under the same trusts."

This deed was properly acknowledged and recorded on July 12, 1865.

Mrs. Hart at the time accepted said settlement, and ever since then has had possession of the property, and has enjoyed its rents and profits.

The trustee, Hough, some years later moved from Tennessee to Massachusetts, and, prior to April 10, 1890, had there died intestate, leaving surviving him his widow, Rebecca W. Hough, and his daughter, Annie H. Brigham, wife of Alfred W. Brigham, all residents of Boston, Mass.

On March 28, 1890, Mrs. Kate Hart and her husband, E. R. Hart, filed, in the Probate Court of Shelby County, their petition to have a new trustee appointed, stating that the original trustee had many years ago removed from the State, and had since died intestate, a resident of the State of Massachusetts, leaving surviving him a widow and one child, Mrs. Annie H. Brigham, his sole heir at law; that they had caused said widow and daughter to acknowledge service of said petition, and asked that a new trustee be appointed.

In the petition it is stated that they had sent the same to the widow and heir of Hough in Massachusetts prior to that time, and that said widow and heir had indorsed on the petition their acknowledgment of service of same. These indorsements are as follows:

"We, Mrs. Rebecca W. Hough and Mrs. Annie H. Brigham, named in the foregoing petition, do hereby acknowledge service of the foregoing petition, and do agree that the same may be heard in the

Probate Court of Shelby County, Tennessee, at the time and place when it may be convenient, and such decree rendered as Court may deem proper.

"MRS. REBECCA W. HOUGH.

"Mrs. ANNIE H. BRIGHAM.

"Witness: A. P. BURDETT."

"I, Alfred W. Brigham, husband of said Annie H. Brigham, join in the foregoing acknowledgment of service and agreement.     ALFRED W. BRIGHAM."

"Witness: A. P. BURDETT."

The decree was rendered March 28, 1890, the same day the petition was verified and filed.

By this decree, R. F. Patterson was appointed trustee in room and stead of Hough, deceased, with the same duties and powers.

In making this appointment, no process was issued, no publication was made; simply the sworn petition, with its exhibits, having indorsed upon it the written indorsements aforesaid, of the widow of Hough and also of the heir, with her husband (she being a married woman), and final decree entered the same day the petition was filed, there being no answer by the defendants and no *pro confesso* against them.

On April 10, 1890, Mrs. Kate Hart, with her husband, E. R. Hart, conveyed this lot, in trust, to John I. Dunn, trustee, to secure to the Lombard Investment Company a note for $6,000, made that day by the grantors. The bill charges that this conveyance was to secure a debt due by her

husband, of which defendants had knowledge; that she received none of the money, etc., and that she signed it at the request of her husband. This deed was registered. Default having been made, the trustee, Dunn, in November, 1895, advertised the property for sale under this conveyance.. To enjoin this sale, and to remove the cloud upon her title, this bill was filed on December 24, 1895. Although Patterson had been appointed trustee on March 28, 1890, he did not join in the execution of the deed of April 10, 1890.

On July 28, 1890, Mrs. Hart, her husband, and Patterson, as trustee, executed to the same party, and to secure the same debt, another trust conveyance, and in the same form. This deed was executed July 28, 1890, but was dated back to April 10, 1890. The sale, however, was advertised to be made under the first, not the second deed, in which the trustee was a grantor.

Complainants, in their bill, insist that Hart and wife alone could not convey the title, and that the attempted sale should be enjoined; further, that the trust was active; that the second deed failed to convey the title because of the want of power to convey; that it was the duty of the trustee to hold the property and see to it that Mrs. Hart received its rents and profits, and, in case of sale, the trustee had to hold the proceeds for her; and that it was a breach of trust to attempt to convey it to secure a debt of her husband.

The bill further claims that the Probate Court had not jurisdiction of the defendants, and no jurisdiction to appoint Patterson trustee, and that said decree was void.

The Chancellor enjoined the sale, and, on demurrer, held ,that the deed to Dunn, trustee, was made in violation of the trust, and was void. He however held that the appointment of Patterson trustee was valid, and dismissed that feature of the bill.

Each party appealed from so much of the decree as held against their respective contentions, and have assigned appropriate errors.

Under the deed from Hart to Hough, trustee, it was the duty of the trustee to hold the property for the benefit of Mrs. Hart; to hold the same, free from the control of her present husband or any future husband, and protect it from the debts and liabilities of her present or future husband; and to hold the rent and profits for her sole use and benefit; and to hold the proceeds of sales, in event of sale of any of the property under the same trust. This made the trust active.

In *Cardwell* v. *Cheatham*, 2 Head, 17, 18 (an opinion delivered by Judge Wright), language in substance the same as here employed, was held to have created an active trust.

There the language was "that said Cheatham should hold the legal title of the lot for the sole and separate use and benefit of complainant, the same not to be liable to the control, or for any

debt or responsibilities to be contracted or incurred, by the said James W. Cardwell, and that the said Cheatham should permit her to use, occupy, rent out, or improve the lot, as she may think proper; and at her request, in writing, to sell and convey the same, and to reinvest the proceeds as she, in writing, might direct, and that the property acquired by the reinvestment should be held by the trustee, in like manner as the original estate; and that said trustee should be responsible only for fraud, or gross neglect of duty, and not for any mismanagement of complainant in the premises.''

About the only difference in the terms used to create these respective trusts, lies in the power given the wife in the Cheatham case, to collect the rents, improve and manage the property, direct its sale, and the reinvestment of its proceeds. In the present case, no such powers are given the wife, but all is invested in the trustee, to hold it and the rents and proceeds of sale, in the event of a sale, for the wife, free from the debts and liabilities of her present or any future husband. In that case, the Court said: '' It was the duty of the defendant, Cheatham, as trustee of the complainant, upon her written request, personally, himself, to sell this lot, and to receive the proceeds, and reinvest it in other property, under her written directions. A sale by the husband was totally unauthorized by the trust. The trustee could not legally pay the purchase money to him, or permit Davis (the purchaser) to

do so, without a plain violation of the terms of the deed. To do so would be a gross neglect of his duty, and, if allowed, would, in effect, annul the trust altogether.

"We have no evidence, nor is it alleged, that the husband received this fund with the complainant's consent. But this could make no difference, for, by the very terms of the deed, he was to have no control over it. Neither was she to have the fund produced by the sale of the lot; it was to be reinvested by the trustee in other property. She was to use, occupy, rent out, or improve the original or substituted property as she might think proper, and for any mismanagement on her part as to these things, the trustee was not liable. But the body of the estate, the fund itself, was not to be consumed or destroyed, but the same was secured, in the hands of the trustee, against the power of the husband and weakness of the wife."

There the husband, as in 'the present case, had conveyed the lot to the trustee, to hold for the wife, free from the control, debts, responsibilities,' contracted or incurred, of the husband, and it was made the duty of the trustee, upon her written request, to sell the lot, receive the proceeds, and reinvest the proceeds in other property under her direction.

The Court held it a palpable breach of trust for the trustee to sign the deed to carry out the sale made by the husband, in which the husband received

the proceeds for his benefit, although the trustee
was authorized by the wife, in accordance with said
deed, to sign the conveyance, because it was made
the duty of the trustee to receive the proceeds of
the sale and reinvest it, and hold it for the wife.
That was so, although Cheatham, the trustee, had
been made such trustee, in the deed from the hus-
band, without his knowledge that he held such a
trust.   He, having assumed to execute the deed to
the lot in the capacity of trustee, was treated as
having accepted said trust, and as having full knowl-
edge of the terms of the deed, under which he held
the lot in trust for the wife.

The rule in this State is, that "the trustee takes
exactly that quantity of interest which the purposes
of the trust require."   *Ellis* v. *Fisher*, 3 Sneed, 234;
*Murdock* v. *Johnson*, 7 Cold., 612; *Harding* v. *St.
Louis Life Ins. Co.*, 2 Tenn. Ch., 468; *Hooberry*
v. *Harding*, 10 Lea, 397.

In the last mentioned case, the Court say:  "Spe-
cial active trusts were never within the province of
the statute of uses.   These are trusts which require
some act to be done, or some duty to be performed
by the trustee, even if the act or duty be for the
benefit of the *cestui que trust.*"

So, "if the trustee is to exercise any discretion
in the management of the estate, in the investment
of the proceeds or the principal, or in the applica-
tion of the increase, or if the purpose of the trust
is to protect the estate for a given time, or until

the death of some one, or until division." And the Court say: "It is upon this ground that the trustee always takes the estate when the trust is in favor of a married woman, even if it be to permit her to receive the rents, or use the property." 10 Lea, 396, citing Perry on Trusts, 305.

In the case of *Jourolmon* v. *Massengill*, 2 Pickle, 97, Judge Lurton, delivering the opinion of this Court, said: "The duty to protect the corpus of the estate from alienation, or either the corpus or income from subjection by creditors of the devisee, and the duty to see that the income was applied to the support of the son and widow during the lives of either, by necessary implication rested upon the trustee. These were active duties, and, if not void because illegal, make the trust an active and not a dry one. If any trust duty be imposed upon the trustee, either expressly or by implication, then the trust will not be a dry one." *Ib.*, 93.

This case approves the 10 Lea case referred to on the subject of what are active trusts, but overrules it on another question, not here involved.

Now, the deed from Hart to Hough, in the first instance, has imposed upon the latter an active trust, as heretofore defined, and if it be admitted that Patterson succeeded to said trust by proper appointment by the Probate Court, the trustee was bound to execute said trust according to its letter and meaning, and he could not lawfully make any conveyance, or perform any act with respect to said

13 P—6

property, that was not authorized by the instrument under which he assumed to act as trustee. *Cardwell* v. *Cheatham*, 2 Head, 14–16; *Campbell* v. *Fields*, 1 Cold., 416; *Hicks* v. *Gosling*, 1 Lea, 570; *Head* v. *Temple*, 4 Heis., 34.

The latest case in Tennessee on what is an active trust is the case of *Porter* v. *Lea*, 4 Pickle, 782. The opinion was delivered by Judge Caldwell, which is decisive of that question when applied to the case at bar, and is in accord with this opinion. The trustee would not have had any right to have sold said property and paid the entire proceeds over to the wife of Hart, nor would he have been authorized in paying over to her more than the rents and profits for her support and maintenance; and even then, if, in the sound discretion of the trustee, it was not necessary to pay her over the total amount of the rents and profits for her support, he could only pay her over so much of the rents and profits as was actually necessary, in his discretion, for her support. Of course this discretion must be properly and judiciously exercised, so as not to deprive Mrs. Hart of any part of the rents and income she might need for her comfortable support and maintenance. This is the proper and only reasonable construction of said deed. In such a case this Court have said: "A trust may be so created that no interest vests in the beneficiary—as, where it is limited to the support and maintenance of the beneficiary, and he is prohibited from alienation or an-

ticipation. So, where the income is to be paid over only in the discretion of the trustee," etc. *Henson* v. *Wright*, 4 Pick., 507.

"In all such cases the purposes of the trust would obviously be defeated if the beneficiary could assign or alienate." *Ib.*

The statute of 1869–70 does not apply in this case, because the trust is active and the fee in the property is vested in the trustee. Mrs. Hart could not, convey without the trustee joining in the conveyance. The trustee could not, without a palpable violation of the trust, convey said property to secure a debt of the husband. And the fact that Mrs. Hart joined in the conveyance, and consented thereto, could make no difference. That portion of the Chancellor's decree which held that said deed of trust, executed by Hart and wife and joined in by Patterson, trustee, was made in violation of said trust, and is void, is affirmed.

It is not important for us to discuss, in this opinion, the assignment of error by complainant to that part of the decree holding that the Probate Court had jurisdiction to appoint Patterson trustee, except to say that the Court deems it unnecessary to determine that question at this time. Cause remanded.

PETITION TO REHEAR.

Since deciding this case, defendants filed a petition

Hart *v.* Bayliss.

to rehear, which has been considered by the Court, and said petition does not raise any new questions, nor call the attention of the Court to any question of fact or of law, that has not been fully considered, and the same is dismissed.